SACHS v. NORN. ·

1. CHATTEL MORTGAGES—RECORD—VALIDITY—GOOD-FAITH CRED-
ITORS.
    A bill of sale, intended to operate as a chattel mortgage, not
    followed by a change of possession, and unrecorded, is void
    as to persons in good faith extending credit to the mortgagor
    without knowledge of its existence. Section 9523, 3 Comp.
    Laws.

2. GARNISHMENT—AFFIDAVIT—DEFECTS—WAIVER.
    After counsel has appeared in garnishment proceedings repre-
    senting the defendant, the garnishee, and an intervening
    claimant, and raised various objections to the proceedings,
    and at the beginning of the trial on the merits states that it
    is agreed that the intervenor shall be regarded as defendant
    in the case, and that whatever judgment is rendered shall be
    binding on him, it is too late to claim that a·defect in the
    affidavit for garnishment, apparent on its face, requires the
    direction of a verdict for the intervenor.

Error to Bay; Shepard, J. Submitted January 4, 1905.
(Docket No. 7.)  Decided March 21, 1905.

Garnishment proceedings by Henry W. Sachs and
Louis E. Wenzel, copartners as Sachs & Wenzel,
against James Norn as garnishee defendant of the Rifle
River Lumber Company. The Lumberman's State Bank
was permitted to intervene as claimant. There was judg-
ment for defendant bank on verdict directed by the court, .
and plaintiffs bring error. Reversed.

*De Vere Hall* (*Gilbert W. Hand*, of counsel), for ap-
pellants.

*Lee E. Joslyn*, for appellees.

MOORE, C. J. The plaintiffs are a firm doing business
at West Branch. The principal defendant was a partner-
·ship association, limited, engaged in lumber business near

that place. The company purchased of plaintiffs between February 1 and June 6, 1902, supplies for use in its camps. Plaintiffs, failing to obtain payment, on December 6, 1902, commenced suit against the principal defendant, which resulted in a judgment against it on November 16, 1903. For the purpose of procuring a writ of garnishment against Mr. Norn in favor of the plaintiffs, Mr. Brockway, at the same time the original suit was brought, as agent and attorney for the plaintiffs, made an affidavit which reads in part as follows:

" And this deponent further says that he has good reason to believe, and does believe, that James Norn, of Standish, Michigan, has property, money, goods, chattels, credits, and effects in his hands and under his custody and control, belonging to said Rifle River Lumber Company, limited, etc., the above-named defendant, and that the said James Norn is indebted to the said Rifle River Lumber Company, limited, etc., the above-named defendant, whether such indebtedness is now due or not. And this deponent further says that he, the said affiant, is justly apprehensive of the loss of said sum of $431.98, so due to the plaintiffs from the said Rifle River Lumber Company, limited, etc., the above-named defendant, unless a writ of garnishment issue to the said Henry W. Sachs and Louis E. Wenzel, a firm and copartnership," etc.

A writ of garnishment was issued and served upon Mr. Norn, who, on December 23, 1902, made a sworn written disclosure showing he was indebted to some one in the sum of $659.82 for lumber; " that on the 3d day of July, 1902, I bought from the Rifle River Lumber Co., per John Walsh, administrator, a quantity of hemlock lumber, and said deal was sanctioned by H. H. Norrington." He further stated therein, " I do not know who I owe; would like the court to say."

A demand for an examination of the garnishee defendant under the statute was made January 2, 1903. An examination was had January 14, 1903, when the following occurred:

" Mr. Joslyn, appearing for the principal defendant, and especially as attorney for the Lumberman's State Bank.

" *Mr. Joslyn :* Let it appear that I appear specially as attorney for the Lumberman's State Bank, and object to the garnishee being sworn, for the reason that the disclosure filed shows that the Lumberman's State Bank, or Henry H. Norrington, representing the bank, is interested in the indebtedness, and the bank has had no notice of the garnishee proceedings or of this examination."

The objection was overruled. No objection was made that the affidavit was defective, and the examination proceeded, Mr. Joslyn taking part therein.

In January, 1904, a trial was had before a jury. At that time the record discloses that De Vere Hall appeared for plaintiff—

" For the defendant, the Rifle River Lumber Company, and for the garnishee defendant, James Norn, and for the Lumberman's State Bank, intervening, L. E. Joslyn.

"*Mr. Joslyn:* In this case it is agreed between the attorney for James Norn, the garnishee defendant, and Hall & Brockway, attorneys for the plaintiffs, that the Lumberman's State Bank may intervene, and that from this time the Lumberman's State Bank will be considered as a defendant in the case, and that whatever determination may be made in the suit as between the plaintiffs and the garnishee defendant shall be binding upon the Lumberman's State Bank.

" *Mr. Hall:* Whom do you represent ?

"*Mr. Joslyn:* I represent the Lumberman's State Bank and also the principal defendant.

" *Mr. Hall:* That is right with respect to any intervention that the bank could take, or any rights it might have or might take by filing the ordinary petition for intervention. There is no objection, and we will treat it as intervening.

" *Mr. Joslyn:* I desire to raise the point of law that the affidavit for the writ of garnishment in this case is not sufficient upon which to warrant the issuing of the writ of garnishment or to found any subsequent proceedings. The statute provides that the plaintiff, or some one on his behalf, shall file an affidavit which requires, among other things, that it shall be stated that the affiant is justly ap-

prehensive of the loss of his claim or the claim of the plaintiff unless a writ of garnishment issue to the party whom he claims is indebted to the principal defendant.   *   *   *

"*Mr. Hall:*  The facts which the plaintiffs expect to be able to prove are that a judgment was secured in this court for goods and supplies furnished the principal defendant, which, with the cost taxed, now amount to about $470; that this writ of attachment was duly issued on the affidavit in question; that Mr. Norn has filed two disclosures, in which no question has been raised such as is now raised; that a notice under the statute for the taking of Mr. Norn's testimony has been given, and his testimony has been taken here, at which time Mr. Joslyn appeared on behalf of the Lumberman's State Bank, and raised a question as to the right of the court to proceed.  He did not raise this question, or any question similar to it.  Mr. Norn was examined by the counsel for the plaintiffs, he was cross-examined by counsel for the bank now raising this question.  That testimony has been transcribed, and stands as testimony in this case.  The case has been on the docket for two terms, at least, and stands continued to this term by special order of the court, and now for the first time this question is raised.  We submit, if it is to be disposed of, it ought to be disposed of on a trial after the proofs are in, so that, if the Supreme Court acts upon this matter, it may act finally, and that there will be no going up there and coming back and a long delay in the matter.

"*The Court:*  I won't make any change in the ruling I made before the recess.  From the affidavit I don't think that there is anything misleading about it, and I will overrule the motion, and, if it is deemed necessary to make any formal amendment, it may be made as a curative one."

Mr. Joslyn made no suggestion that the statement of Mr. Hall was not true.  The court permitted the amendment, and the trial proceeded upon the merits, Mr. Joslyn taking part therein.

Upon the trial a paper was introduced in evidence, the material portions of which read as follows:

"Know all men by these presents, that the Rifle River Lumber Company, limited, a partnership association organized and doing business under the laws of the State of Michigan, for and in consideration of the sum of one

dollar, and other good and sufficient consideration, to it paid by Henry H. Norrington, treasurer of said Rifle River Lumber Co., Ltd., of West Bay City, Bay county, Michigan, for the uses and purposes hereinafter referred to, have granted, bargained, and sold, and does hereby grant, bargain, and sell to the said Henry H. Norrington, treasurer, all of the following personal property and chattels, to wit: All of the timber, logs, and lumber now standing, growing, or being on the following-described lands in Ogemaw county.   *   *   *

"Also all the West Branch Mill property, so called, including furniture, fixtures, and supplies in the office and bed rooms, sleeping camps, cook camps, West Branch yards, camp equipments, blacksmith shops, together with all of the other goods, chattels, and personal property described and referred to in a certain bill of sale.   *   *   * Provided always, and this agreement is subject to the following covenants and agreements, to wit:

"(*a*) Said Rifle River Lumber Co., Ltd. (hereinafter called first party), is to have possession of all the foregoing goods, chattels, and property, with the full right to use the same for the purpose of manufacturing the timber and logs referred to into lath, lumber, shingles, ties, posts, and other suitable marketable material, and to sell and dispose of such material in the usual course of trade. But said first party shall not dispose of or sell any of the within and foregoing goods, chattels, or property, except in the usual course of trade, without the written consent of said Norrington (hereinafter designated as second party). * * *

"(*c*) It is understood and agreed that this bill of sale is given for the express purpose of securing the just and full payment of the sum of fifteen thousand dollars ($15,000.00), owing and due, or to be advanced and to become due, to the Lumberman's State Bank of West Bay City, Bay County, Michigan, from said first party.   *   *   *

"(*e*) If said first party shall at any time neglect, refuse, or fail to pay the aforesaid sum or sums of money whenever and as often as the same shall become due and payable; or if said first party shall sell, assign, transfer, mortgage, or incumber said property or any part or parcel thereof, or shall permit any lien whatsoever to be placed thereon and shall not promptly discharge the same, and if in the opinion of said second party the security herein provided for is or shall become impaired, then and in that case, said second party may take possession of all of the

within and foregoing property (and which shall also include any and all sums of money due or owing to said first party, all bills receivable, accounts and bills of account, all books, and all of the property of every kind, name or nature owned by said first party whether the same is or shall be herein described or referred to or not), and to use the same in such manner as he shall deem for the best interests of the said bank.  And said second party in such event may continue the business herein contemplated, or he may sell and dispose of said goods, chattels, and property, in bulk or in parcels, at public or private sale, giving such notice of the sale thereof, if any, as he may deem for the best interests of said bank.  *   *   *

"Dated March 14, 1902."

Upon the trial it was conceded by Mr. Joslyn, representing all the interest not represented by the plaintiffs, that Sachs and Wenzel knew nothing of the claims of the Lumberman's State Bank at the time they sold the goods to the defendant for which they secured a judgment in this court, and that the business was then conducted by the Rifle River Lumber Company, at West Branch, and that there was no chattel mortgage or conveyance of any kind from the Rifle River Lumber Company to the bank, or any one representing the bank, filed in the city recorder's office of West Bay City, where the office of the principal defendant is, or in the township clerk's office at West Branch, where this property in Ogemaw county was located, or the register of deeds' office at West Branch being in the said Ogemaw county.

At the conclusion of the testimony on the part of the plaintiffs, the circuit judge directed a verdict in favor of defendant.  The case is brought here by writ of error.

The plaintiffs claim a verdict should have been directed in their favor.  It was their claim that Mr. Norn bought the lumber of the principal defendant, and was indebted to it.  It was the contention of the intervening claimant that the lumber was bought from the Lumberman's State Bank, and that the direction of the verdict was right. The position of plaintiffs is discussed by counsel under eight heads, the last one of which is "that under section

9523 of the Compiled Laws of 1897 the bill of sale was entirely void as to plaintiffs as a matter of law, and, in any event, under section 9520 of the Compiled Laws, plaintiffs were entitled to go to the jury, because there was no actual or continued change of possession of the property covered by the bill of sale."

If it had been entirely clear that Mr. Norn purchased the property of the principal defendant, as claimed by plaintiffs, we have no doubt that, inasmuch as the paper called a bill of sale was not recorded, the case would come within section 9523, 3 Comp. Laws. As the lien given to the Lumberman's State Bank was not properly filed, and the plaintiffs had no knowledge of it, when they extended the credit, it would be void as to them. We think it equally clear that the bank could not, by making a sale to Mr. Norn, put him in any better position than it occupied. Taking either horn of the dilemma, we think plaintiffs were entitled to priority, and a verdict should have been directed in their favor. Section 9523, 3 Comp. Laws, and the many cases cited thereunder. See, also, *Lingle* v. *Owosso Sugar Co.*, ante, 203.

Defendants contend that the reasons given by the circuit judge in directing a verdict were based upon an undisputed legal basis; but, whether they were or not, it is contended that the verdict is a proper one, for the reason that plaintiffs and appellants had no standing whatever in court by reason of the defective affidavit filed in the garnishment proceedings; citing *Maynards* v. *Cornwell*, 3 Mich. 311, and other cases, all of which we have examined, as well as the case of *Hebel* v. *Insurance Co.*, 33 Mich. 400. A reference to these cases will show they are distinguishable from the one at bar. In this case, after personal service upon him, the garnishee defendant, without questioning the jurisdiction of the court, made a disclosure. Later, when the garnishee defendant was examined under the statute, Mr. Joslyn appeared generally for the principal defendant and specially for the intervening claimant, and objected to the garnishee defendant being sworn, be-

cause the disclosure which had been made showed the bank was interested, and had not received notice of the garnishee proceedings. When the objection was overruled, the examination proceeded, and Mr. Joslyn took part therein. It will be observed the jurisdiction of the court was not questioned, because of a defective affidavit, by any of the parties who were then before it, and they were all there. Again, upon the trial Mr. Joslyn appeared for the principal defendant and for the garnishee defendant, and agreed with the attorney for the plaintiffs in open court that the bank might intervene, and "that from this time the Lumberman's State Bank will be considered as a defendant in the case, and that whatever determination may be made in the suit as between the plaintiffs and the garnishee defendant shall be binding upon the bank." After this occurred, objection was made to the sufficiency of the affidavit, as we have already stated. It was amended, over the objection of counsel, so as to cure a defect which appeared upon the face of the affidavit, and the trial upon the merits proceeded, counsel who had appeared as we have stated, taking part therein. Under these circumstances we do not think it can be said the judge should have directed a verdict because of the defects in the affidavit. See *Millard* v. *Lenawee Circuit Judge*, 107 Mich. 134; *Wattles* v. *Wayne Circuit Judge*, 117 Mich. 662; *Union Nat. Bank of Chicago* v. *Muskegon Circuit Judge*, 117 Mich. 678; Tiffany's Justice Guide (5th Ed.), pp. 136, 137, and cases cited in note 1.

Judgment is reversed, and new trial ordered.

McALVAY, GRANT, BLAIR, and HOOKER, JJ., concurred.